## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| THE NATIONAL SECURITY ARCHIVE FUND, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE CENTRAL INTELLIGENCE AGENCY, <br><br> Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 04-1821 (RMC) |

## <u>MEMORANDUM OPINION</u>

The National Intelligence Council within the Central Intelligence Agency ("CIA") regularly prepares intelligence analyses of troubled hot spots around the globe.  It prepared the 2004 National Intelligence Estimate on Iraq ("2004 Iraq NIE") in July 2004.  There is no dispute that the 2004 Iraq NIE contains classified information not subject to disclosure under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  The sole question posed by this FOIA action is whether the CIA has provided sufficient detail to support its determination that there is no segregable, non-classified information in the document that can be released to the National Security Archive Fund, Inc. ("Fund"), a not-for-profit corporation that collects and publishes declassified documents acquired through FOIA.  Before the Court are the CIA's Motion for Summary Judgment and the Fund's Cross Motion for *In Camera* Review.  Finding that the CIA has sufficiently explained why no portion of the 2004 Iraq NIE can be released at this time, the Court will grant the CIA's motion for summary judgment, deny the Fund's cross motion for *in camera* review, and dismiss the action.

## I. BACKGROUND

The underlying facts are not in dispute.  By letter dated September 16, 2004, the Fund requested that the CIA provide, pursuant to FOIA, "the National Intelligence Estimate (NIE) prepared in July 2004 on Iraq."  Declaration of Martha M. Lutz, Information Review Officer, CIA ("Lutz Decl.") ¶ 7.  In addition, the Fund asked that its request be expedited and that normal search-and-review fees be waived.  *Id.*  The CIA responded on September 28, 2004, denying the request for expedited processing and placing the Fund in the "representative of the news media" fee category. On October 20, 2004, following the denial of a further request for expedited processing, the Fund filed this action, together with a motion for a temporary restraining order enjoining the CIA from continuing to deny expedited treatment to the Fund's FOIA request.

By letter dated October 22, 2004, the CIA provided a final response to the Fund's request.  That letter reported the CIA's determination that all material responsive to the request "is properly classified and must be denied in its entirety on the basis of FOIA exemptions (b)(1) and (b)(3)."  Lutz Decl. ¶ 11.  On November 3, 2004, the Fund amended its complaint to seek release of the 2004 Iraq NIE.

The single document requested by the Fund was prepared by the National Intelligence Council ("NIC"), part of the Office of the Director of Central Intelligence ("DCI").  Lutz Decl. ¶¶ 1, 13.  The NIC coordinates and presents "the substantive finished intelligence output of the Intelligence Community as a whole; that is, the intelligence products that pool the judgments of the agencies making up the National Foreign Intelligence Board."  *Id.* ¶ 13.  Such intelligence products are usually in the form of NIEs.  *See id.*  The 2004 Iraq NIE

provides an assessment of Iraq's capabilities for internal stability and self-governance. . . .

　　　. . . [It] is based on and incorporates all-source reporting and intelligence, with classified information inexorably intertwined through the document. [It] analyzes political, social, economic, and security information regarding Iraq, extrapolates from this analysis to posit scenarios, and assigns probabilities based on different combinations of events and factors. [It] concludes with a section intended to provide policymakers with additional guidance on how U.S. policies related to Iraq may best be implemented.

*Id.* ¶¶ 14-15.   Martha M. Lutz, the Information Review Officer for the Director of Central Intelligence Area, made the determinations at issue here.   Ms. Lutz holds original classification authority at the TOP SECRET level and is authorized to make classification and declassification decisions.   *Id.* ¶ 3.   Ms. Lutz declares that she "carefully conducted a line-by-line review" of the 2004 Iraq NIE before deciding that it "must be protected from release in its entirety."   *Id.* ¶ 6.

## II.  LEGAL STANDARDS

　　　Summary judgment is the routine vehicle by which most FOIA actions are resolved where there are no material facts genuinely at issue.  *See Alyeska Pipeline Serv. Co. v. EPA*, 856 F.2d 309, 314-15 (D.C. Cir. 1988); *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). FOIA requires agencies of the federal government to release records to the public upon request, unless one of nine statutory exemptions applies.  *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1975).  "[D]isclosure, not secrecy, is the dominant purpose of the Act."  *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976); *see also DOI v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).  FOIA gives an agency twenty working days to determine "whether to comply with such request and . . . immediately notify the person making such request of such determination and the reasons therefor" and the requester's right to appeal any adverse determination.  5 U.S.C. § 552(a)(6)(A)(I).  This time limit may be extended for up to ten days under unusual circumstances.

*Id.* § 552(a)(6)(B)(I).

The court conducts a *de novo* review of an agency's determination to withhold records. 5 U.S.C. § 552(a)(4)(B); *see Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1384 (D.C. Cir. 1979). The government bears the burden of justifying nondisclosure. *See McCutchen v. U.S. Dep't of Health & Human Servs.*, 30 F.3d 183, 185 (D.C. Cir. 1994). It may satisfy that burden through the submission of agency declarations of sufficient detail to describe the withheld material with reasonable specificity and specify the reasons for nondisclosure. *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 753 (1989). This degree of particularity is often supplied by a *Vaughn* index, named for *Vaughn v. Rosen*, 484 F.2d 820, 823-25 (D.C. Cir. 1973). In this case, since only a single document is involved, the CIA has submitted the Lutz Declaration.

Summary judgment may be entered under Rule 56 of the Federal Rules of Civil Procedure when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)). Material facts are those that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In FOIA cases, summary judgment is often entered from a record composed of government affidavits or declarations that explain how requested information falls within a claimed exemption, as long as the affidavits or declarations are sufficiently detailed, nonconclusory, and submitted in good faith, and a plaintiff has no significant basis for questioning their reliability. *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978). For the United States to prevail, it must prove "that each document that falls within the class requested either has been produced, is unidentifiable,

or is wholly exempt from [FOIA's] inspection requirements." *Nat'l Cable Television Ass'n Inc. v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973).

### III.  DISCUSSION

#### A.  Relevant FOIA Exemptions

The CIA identifies three FOIA exemptions that it asserts protect the 2004 Iraq NIE from disclosure at this time: Exemptions 1, 3, and 5.  Exemption 1 allows an agency to withhold matters that are: "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order."  5 U.S.C. § 552(b)(1).  For its authority to invoke Exemption 1, the CIA cites Section 6.1(h) of Executive Order 12,958, as amended, which defines "classified national security information" or "classified information" as "information that has been determined pursuant to this order or any predecessor order to require protection against unauthorized disclosure and is marked to indicate its classified status when in documentary form."  Exec. Order No. 12,958, 60 Fed. Reg. 19,825 (April 17, 1995).  Ms. Lutz declares that the 2004 Iraq NIE is protected under E.O. 12,958, and thus FOIA Exemption 1, as "intelligence activities (including special activities), intelligence sources or methods, or cryptology" and "foreign relations or foreign activities of the United States, including confidential sources."  *See* Lutz Decl. ¶ 18.

FOIA Exemption 3, upon which the CIA also relies, protects matters that are specifically exempted from disclosure by a statute other than FOIA itself, provided that such statute: "(A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3).  The CIA relies on Section 6 of the Central

Intelligence Agency Act of 1949[1] and Section 103(c)(7) of the National Security Act of 1947[2] as the non-FOIA statutes that require that certain matters contained in the 2004 Iraq NIE not be disclosed. *See* Lutz Dec. ¶¶ 16, 43.

In reviewing classification determinations under Exemption 1, the D.C. Circuit has repeatedly stressed that "substantial weight" must be accorded agency affidavits concerning the classified status of the records at issue. *See, e.g.*, *Krikorian v. Dep't of State*, 984 F.2d at 464; *Military Audit Project*, 656 F.2d at 738. As the D.C. Circuit has cautioned, "Judges . . . lack the expertise necessary to second-guess such agency opinions in the typical national security FOIA case." *Halperin v. CIA*, 629 F.2d 144, 148 (D.C. Cir. 1980). The only issues presented in an Exemption 3 claim are the existence of a qualifying disclosure-prohibiting statute, and the logical inclusion of the withheld information within the scope and coverage of that statute. *Public Citizen Health Research Group v. FDA*, 704 F.2d 1280, 1284 (D.C. Cir. 1983). Courts evaluating Exemption 3 claims must accord the same substantial weight to the agency's judgment as with

---

[1] This provision is codified as amended at 50 U.S.C. § 403g (2005), and provides:

> In the interests of the security of the foreign intelligence activities of the United States and in order further to implement section 403-1(i) of this title that the Director of National Intelligence shall be responsible for protecting intelligence sources and methods from unauthorized disclosure, the Agency shall be exempted from the provisions of . . . any . . . law which require[s] the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency . . . .

[2] This provision, formerly codified at 50 U.S.C. § 403-3(c)(7), is now codified as amended at 50 U.S.C. § 403-1(i)(1) (2005), and provides that the "Director of National Intelligence shall protect intelligence sources and methods from unauthorized disclosure." Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, 118 Stat. 3638 (2004).

Exemption 1 claims.  *See CIA v. Sims*, 471 U.S. 159, 179 (1985) ("The decisions of the Director, who must of course be familiar with 'the whole picture,' as judges are not, are worthy of great deference given the magnitude of the national security interests and potential risks at stake."); *Gardels v. CIA*, 689 F.2d 1100, 1104-05 (noting that "substantial weight" must be accorded agency determinations under Exemption 3); *Phillippi v. CIA*, 655 F.2d 1325, 1332 (D.C. Cir. 1981) (same).[3]

Finally, the CIA claims that the 2004 Iraq NIE is completely exempt from disclosure under FOIA Exemption 5 because it constitutes a pre-decisional memorandum.  FOIA does not require an agency to produce "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5) ("Exemption 5").  This "exempts those documents . . . that are normally privileged in the civil discovery context," including the deliberative process privilege known at common law. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).  Such records are those that "reflect[] advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated."  *Id.* at 150.  The purpose of the privilege is to "enhance the quality of agency decisions, by protecting open and frank discussion among those who make them within the Government."  *Klamath Water Users Protective Ass'n*, 532 U.S. at 9 (internal quotation marks and citation omitted).

"In deciding whether a document should be protected by the privilege [courts] look

---

[3]  Although the D.C. Circuit has noted some differences in the review of Exemption 1 and Exemption 3 claims, those differences are not pertinent here.  *See Fitzgibbon v. CIA*, 911 F.2d 755, 764 (D.C. Cir. 1990) ("[W]e must conclude that the importation of standards into the exemption 3 analysis from the exemption 1 analysis is improper, at least insofar as the latter analysis could be read to require the court to consider the effect of the passage of time on materials withheld under exemption 3.")

to whether the document is 'predecisional'—whether it was generated before the adoption of an agency policy—and whether the document is 'deliberative'—whether it reflects the give-and-take of the consultative process." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). "To establish that a document is predecisional, the agency need not point to an agency final decision, but merely establish what deliberative process is involved, and the role . . . that the documents at issue played in that process." *Judicial Watch v. Export-Import Bank*, 108 F. Supp. 2d 19, 35 (D.D.C. 2000) (citing *Formaldehyde Inst. v. HHS*, 889 F.2d 1118, 1123 (D.C. Cir. 1989)).

### B. Segregability Requirement

The Fund does not dispute that the 2004 Iraq NIE contains material that meets the above exemptions. It argues, rather, that the CIA has failed to provide sufficient detail to justify its determination that it contains no segregable non-classified information. *See* Plaintiff's Motion for *In Camera* Review ("Pltf.'s Motion") at 9 ("Plaintiff does not dispute that the government has met its burden of demonstrating that the document contains some exempt material. The government has failed, however[,] to meet its burden to allow the Court to determine, without examining the document, that all reasonably segregable portions have, in fact, been released and to allow plaintiff an opportunity to intelligently advocate for release of non-exempt portions of the withheld document."). Specifically, the Fund submits that the CIA has proffered only conclusory statements regarding segregability that do not provide enough information to allow the Court to conduct a *de novo* review of the accuracy of this claim. *See Krikorian v. Dep't of State*, 984 F.2d 461, 466-67 (D.C. Cir. 1993) ("[T]he withholding agency must supply 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.' ") (quoting *King v. U.S.*

*Dep't of Justice*, 830 F.2d 210, 224 (D.C. Cir. 1987)).

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided . . . after deletion of the portions which are exempt." 5 U.S.C. § 552(b). The D.C. Circuit has made clear that "[t]he 'segregability' requirement applies to all documents and all exemptions in the FOIA." *Ctr. for Auto Safety v. EPA*, 731 F.2d 16, 21 (D.C. Cir. 1984). Agencies cannot withhold entire documents unless they can demonstrate that the non-exempt portions of a document are "inextricably intertwined with exempt portions." *Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1027 (D.C. Cir. 1999) (quoting *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977)); *see Vaughn v. Rosen*, 484 F.2d at 825 ("An entire document is not exempt merely because an isolated portion need not be disclosed. Thus the agency may not sweep a document under a general allegation of exemption, even if that general allegation is correct with regard to part of the information.").

In short, the Fund resists the CIA's motion for summary judgment by arguing that the agency has wholly failed to provide sufficient information to permit the Court to assess its claim that the 2004 Iraq NIE contains no segregable, non-exempt portions that can be disclosed. Under the circumstances presented, the Court cannot agree.

**C. Analysis**

The United States is at war in Iraq against a particularly pernicious enemy. We have soldiers fighting terrorists and insurgents, who appear to have flooded into Iraq from other places. *See* Director of Central Intelligence Porter J. Goss, Global Intelligence Challenges 2005: Meeting Long-Term Challenges with a Long-Term Strategy, Testimony Before the Senate Select Committee on Intelligence 1 (Feb. 16, 2005) (remarks as prepared for delivery) ("[The CIA] do[es] not make

policy.  We do not wage war.  I am emphatic about that and always have been.  We do collect and analyze information.") (Dkt. #20, Exh. 1).  It is in this context that the Court reviews whether the CIA has sufficiently detailed its determination that its 2004 analysis concerning Iraq is exempt from FOIA disclosure.

Ms. Lutz declares that she first determined that the information being withheld falls within at least two of the seven categories for classifying information identified in Section 1.4 of E.O. 12,958, as amended,[4] and then separately determined that "no reasonably segregable, non-exempt portion of the document exists."  Lutz Decl. ¶¶ 6, 18.  It is this latter conclusion that is under attack, not the former.  The Fund argues that "the story" from Ms. Lutz's declaration does not make "reasonable logical sense in light of all the facts available to the Court" and that some parts of the 2004 Iraq NIE could be segregated and produced because the CIA already has given public and private briefings on Capitol Hill and has talked to the news media concerning events and progress in Iraq.  Pltf.'s Reply at 2.

Examining Ms. Lutz's declaration, one first learns that the 2004 Iraq NIE "contains explicit assessments of current U.S. intelligence capabilities and how those capabilities might be allocated to best assist U.S. and Coalition activities in Iraq."  Lutz Decl. ¶ 19. Such information could alert hostile forces to the strengths and strategies of U.S. and Coalition forces and assist them to take countermeasures more effectively.  *Id.* ¶ 20.  The 2004 Iraq NIE also "contains discussion and analysis of current and potential conditions in Iraq . . . , [which] may directly or indirectly indicate areas where information is incomplete or speculative, *i.e.*, where 'gaps' in U.S. intelligence

---

[4] Namely, "intelligence activities . . . , intelligence sources or methods," § 1.4(c), and "foreign relations or foreign activities of the United States, including confidential sources," § 1.4(d).  Lutz Decl. at ¶ 18.

may lie." *Id.* ¶ 21.  This kind of information may be of use to opponents "to thwart the [CIA's]

intelligence activities, impair the [CIA's] collection abilities, and endanger lives." *Id.*  For these

reasons, Ms. Lutz determined that the disclosure of such information "could reveal past or present

intelligence activities that could reasonably be expected to cause serious damage to the national

security of the United States." *Id.* ¶ 22.  The Fund does not challenge this analysis or conclusion.

Next, Ms. Lutz's declaration addresses the reliance of the CIA on various types of

intelligence sources to collect foreign intelligence, including individuals who could be at severe risk

if their cooperation with the CIA became known.  "[I]n many cases, even if the source[']s identity

is not revealed, the very nature of the information communicated necessarily tends to reveal the

source because of the limited number of individuals who have access to the information." Lutz Decl.

¶ 26.  The release of information "that would tend to reveal the identity" of intelligence sources

would also "have a serious effect upon the [CIA's] ability to recruit other potential sources in the

future." *Id.* ¶ 27.  She adds, "The loss of such intelligence sources, and the accompanying loss of

the critical intelligence that they provide, could reasonably be expected to cause serious damage to

the national security." *Id.* ¶ 28.  For these reasons, Ms. Lutz concluded that this kind of information

was exempt from disclosure under FOIA Exemptions 1 and 3 and the National Security Act of 1947.

*Id.* ¶¶ 29, 44.  The Fund does not challenge this analysis or conclusion.

Further, Ms. Lutz declares that "[t]he information at issue in this case would tend to

reveal intelligence methods." *Id.* ¶ 30.  The 2004 Iraq NIE contains information concerning "foreign

intelligence relationships of the United States" and "technical collection methods used to gather

intelligence," which have value "only so long as they or their use remain unknown and unsuspected."

*Id.* ¶¶ 30, 31.  Releasing the results of such intelligence gathering might assist forces hostile to the

United States in deducing the existence of such intelligence-gathering mechanisms "from the very fact that the U.S. Government has information." *Id.* ¶ 31.  "In fact, once an intelligence method or its use is discovered, the method may be neutralized by hostile intelligence services or terrorist organizations, and eventually even turned against the United States." *Id.* ¶ 33.  Because foreign intelligence services "have as one of their primary defensive missions the discovery of the particular methodologies the CIA utilizes," they scour the public sector for released intelligence information. *Id.* ¶ 36.  Moreover, "[e]ven from disparate and seemingly unimportant details, foreign intelligence services can learn how to thwart the Agency's intelligence gathering capabilities.  What may seem trivial to the uninformed, may in fact be of great significance and may put a questioned item of information in its proper context." *Id.*  For these reasons, Ms. Lutz determined that information responsive to the Fund's FOIA request that could reveal intelligence methods was classified and exempt from FOIA disclosure by Exemptions 1 and 3.[5]  *Id.* ¶ 38.  The Fund does not dispute this analysis or conclusion.

According to Ms. Lutz, the 2004 Iraq NIE "contains candid descriptions, judgments, and analyses of various elements of the fledgling Iraqi government and institutions" and "also contains analysis and other material that is directly relevant to ongoing foreign activities of the United States." *Id.* ¶ 39.  The necessary candor of the estimate might "provoke resentment, anger, or offense, thereby complicating U.S. foreign relations." *Id.* ¶ 40.  For these reasons, Ms. Lutz determined that release of information pertaining to U.S. foreign relations and activities could

_____

[5]  *See Gardels*, 689 F.2d at 1106 ("We must take into account . . . that each individual piece of intelligence information, much like a piece of jigsaw puzzle, may aid in piecing together other bits of information even when the individual piece is not of obvious importance itself.") (citation omitted).

reasonably be expected to cause serious damage to the national security, is properly classified, and is exempt from disclosure pursuant to Exemption 1.  *Id.* ¶ 41.  The Fund does not challenge this analysis or conclusion.

Section 6 of the Central Intelligence Agency Act of 1949 exempts from disclosure "the organization, functions, names, official titles, salaries, or numbers of personnel employed" by the CIA.  *Id.* ¶ 45; 50 U.S.C. § 403g.  Ms. Lutz declares that the 2001 Iraq NIE "contains certain Agency-specific information pertaining to the titles, organizational identifiers, and filing instructions of [CIA] internal organizational components that falls within the scope of Section 6 of the CIA Act" and is therefore exempt from disclosure under Exemption 3.  Lutz Decl. ¶ 45.  The Fund does not challenge this analysis or conclusion.[6]

The reader will have noted that the Fund does not dispute that information that would reveal past or present intelligence activities, intelligence sources, intelligence methods, classified foreign activities or the internal organizational structure or personnel of the CIA is exempt from disclosure under FOIA.  Its point is more refined: the Fund challenges paragraph 53 (of the 54-paragraph Lutz Declaration) as providing insufficient detail concerning segregability.  In that paragraph, Ms. Lutz declared:

> Following a careful review and consideration of the [2004 Iraq NIE], as a whole, and on a line-by-line basis, I have determined that [it] must be protected from release in its entirety, on the basis of FOIA exemptions (b)(1), (b)(3), and (b)(5), and that no reasonably segregable, non-exempt portion of

---

[6] Ms. Lutz finally declares that she found the 2004 Iraq NIE also covered by FOIA Exemption 5 as a pre-decisional deliberative document protected by the deliberative process privilege.  The Fund strenuously opposes the CIA's position on Exemption 5.  Because it is not necessary to the Court's decision, the Court will not resolve this dispute.  *See* Def.'s Motion for Summary Judgment at 17 n.1 ("Defendant submits that the Court need not reach [its exemption 5] argument if it accepts Defendant's arguments on exemptions 1 or 3.").

the document exists.  I have determined that there are no meaningful segments of information that reasonably can be segregated for release.  All of the information in the [2004 Iraq NIE] is related to intelligence activities, sources and methods, foreign government information, foreign relations and activities, and/or the deliberative process.  Any non-exempt information is so inextricably intertwined with the exempt information that release of the non-exempt information would produce only incomplete, fragmented, unintelligible sentences composed of isolated, meaningless words.  Therefore, I have determined that the non-exempt information cannot be reasonably segregated from the exempt information.

Lutz Decl. ¶ 53.  The Fund argues that, because the CIA has given extensive public testimony and issued other statements concerning the situation in and outlook for Iraq, it is not credible to believe that no information in the 2004 Iraq NIE can be segregated and released.  It urges the Court to conduct an *in camera* review of the document "to verify the agency's descriptions and provide assurances, beyond a presumption of administrative good faith, to FOIA plaintiffs that the descriptions are accurate and as complete as possible."  *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 262 n.59 (D.C. Cir. 1977).

The Court declines to order the CIA to produce the 2004 Iraq NIE for *in camera* inspection.  Taken in its entirety, Ms. Lutz's declaration provides sufficient detail of the nature of the classified and other exempt information contained in the document for the Court to conclude that those isolated words or phrases that might not be redacted for release would be meaningless.  This case presents the perfect occasion to heed the D.C. Circuit's cautionary instruction that "Judges . . . lack the expertise necessary to second-guess such agency opinions in the typical national security FOIA case."  *Halperin v. CIA*, 629 F.2d 144, 148 (D.C. Cir. 1980); *see also CIA v. Sims*, 471 U.S. 159, 180 (1985) ("[I]t is the responsibility of the Director of Central Intelligence, not that of the judiciary, to weigh the variety of complex and subtle factors in determining whether disclosure of

-14-

information may lead to an unacceptable risk of compromising the Agency's intelligence-gathering process."). Moreover, it is now well settled that the CIA "may protect all intelligence sources, regardless of their provenance," as well as all information related to intelligence methods, described as " 'the heart of all intelligence operations' " by the Supreme Court. *Fitzgibbon v. CIA*, 911 F.2d 755, 762 (D.C. Cir. 1990) (quoting *CIA v. Sims*, 471 U.S. at 167). Indeed, the Court would be hard-pressed to determine whether any specific information in the 2004 Iraq NIE would, by its very nature, reveal a confidential source or an intelligence-gathering methodology.

In light of these precedents, the Court concludes that the Fund has not, and cannot, meet the standard of *Afshar v. Dep't of State*, 702 F.2d 1125, 1133 (D.C. Cir. 1983), which requires the release of otherwise-exempt information when it has already been "officially acknowledged" by the agency. *Fitzgibbon v. CIA*, 911 F.2d at 765 (quoting *Afshar*, 702 F.2d at 1133). *Afshar* established three criteria for an item to be officially acknowledged:

> First, the information requested must be as specific as the information previously released. Second, the information requested must match the information previously disclosed . . . . Third, . . . the information requested must already have been made public through an official and documented disclosure.

*Id.* (citing *Afshar*, 702 F.2d at 1133). The Fund contends that the Court should make a side-by-side comparison of the key judgments of the 2004 Iraq NIE with "statements by the White House, National Security Council, Department of State and Department of Defense" and that such a comparison "would likely demonstrate that much of the information . . . has already been publically aired by the government in officially authorized testimony, speeches, publications and the like." Pltf.'s Opp. at 15. A comparison must reach such a conclusion, according to the Fund, unless official witnesses have been less than candid or accurate with the Congress.

-15-

This argument constitutes pure speculation and does not answer the express dictates of the Supreme Court and the D.C. Circuit that the courts give substantial weight to the CIA's declaration. *Fitzgibbon v. CIA*, 911 F.2d at 762; *Krikorian v. Dep't of State*, 984 F.2d at 464. The Fund's bald assertion that it must be so does not establish either that the CIA made any official release of any part of the 2004 Iraq NIE or that any information now requested matches any information previously released. The courts do not play a "guessing game" with such sensitive and potentially dangerous information. *See Assassination Archives and Research Ctr. v. CIA*, 177 F. Supp. 2d 1, 10 (D.D.C. 2001), *aff'd*, 334 F.3d 55, 60-61 & n.6 (D.C. Cir. 2003).

## IV.  CONCLUSION

The Court cites Ms. Lutz's declaration at length to clarify the context and content of the 2004 Iraq NIE. Paragraph 53, on which the Fund concentrates its attention, cannot be reviewed in a vacuum. From the entire declaration, it is obvious that the purpose of the 2004 Iraq NIE was to summarize classified intelligence information and to present recommendations or options for future activities in Iraq, where we are engaged in active hostilities. The Court concludes that the CIA has provided sufficient detail for a *de novo* review of its determinations that the 2004 Iraq NIE is exempt from disclosure under FOIA Exemptions 1 and 3 and that there are no segregable portions that might sensibly be released. Therefore, the CIA's motion for summary judgment will be granted, the Fund's cross motion for *in camera* review denied, and the case dismissed. A memorializing Order accompanies this Memorandum Opinion.


Signed: September 30, 2005                                    _____/s/_____
                                                             ROSEMARY M. COLLYER
                                                             United States District Judge